Joel E. Elkins (SBN 256020)
jelkins@weisslawllp.com
**WEISSLAW LLP**
9100 Wilshire Blvd. #725 E.
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile: 310/209-2348

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| GEORDIE HAWKINS,<br><br>Plaintiff,<br><br>vs.<br><br>BOINGO WIRELESS, INC., LANCE ROSENZWEIG, MAURY AUSTIN, ROY H. CHESTNUTT, MICHELE V. CHOKA, CHUCK DAVIS, MIKE FINLEY, DAVID HAGAN, TERRELL JONES, and KATHY MISUNAS,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Geordie Hawkins ("Plaintiff"), on behalf of himself and all others similarly situated, upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to

Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

**NATURE OF THE ACTION**

1. This is an action brought by Plaintiff against Boingo Wireless, Inc. ("Boingo" or the "Company") and the members of Boingo's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which Boingo will be acquired by an affiliate of Digital Colony Partners II, LP ("Digital Colony") through the affiliate's subsidiaries White Sands Parent, Inc. ("Parent") and White Sands Bidco, Inc. ("Merger Sub") (the "Proposed Transaction").

2. On March 1, 2021, Boingo issued a press release announcing that it had entered into an Agreement and Plan of Merger dated February 26, 2021 (the "Merger Agreement"). Under the terms of the Merger Agreement, each Boingo stockholder will be entitled to receive $14.00 in cash for each share of Boingo common stock they own (the "Merger Consideration"). The Proposed Transaction is valued at approximately $854 million.

3. On April 28, 2021, Boingo filed a Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that Boingo stockholders vote in favor of the Proposed Transaction, omits

or misrepresents material information concerning, among other things: (i) the financial projections for Boingo and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, TAP Advisors, LLC ("TAP Advisors"); and (ii) the background of the Proposed Transaction. Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. In short, unless remedied, Boingo's public stockholders will be irreparably harmed because the Proxy Statement's material misrepresentations and omissions prevent them from making a sufficiently informed voting or appraisal decision on the Proposed Transaction. Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. §1331 (federal question jurisdiction).

6. The Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391 because: (i) the Company's principal executive offices are located in this District; (ii) one or more of the defendants either resides in or maintains executive offices in this District; and (iii) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

**THE PARTIES**

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Boingo.

9. Defendant Boingo is a Delaware corporation, with its principal executive offices located at 10960 Wilshire Blvd., 23rd Floor, Los Angeles, California 90024. The Company's vast footprint of distributed antenna systems ("DAS"), Wi-Fi and small cells reaches more than a billion people annually, making Boingo one of the largest providers of indoor wireless networks. Boingo's common stock trades on the NASDAQ Global Select Market under the ticker symbol "WIFI."

10. Defendant Lance Rosenzweig ("Rosenzweig") has been Chairman of the Board since March 2019, Lead Independent Director since August 2017, and a director of the Company since July 2014.

11. Defendant Maury Austin ("Austin") has been a director of the Company since June 2016.

12. Defendant Roy H. Chestnutt ("Chestnutt") has been a director of the Company since August 2019.

13. Defendant Michele V. Choka ("Choka") has been a director of the Company since December 2018.

14. Defendant Chuck Davis ("Davis") has been a director of the Company since August 2011.

15. Defendant Mike Finley ("Finley") has been Chief Executive Officer ("CEO") of the Company since March 2019 and a director since August 2013.

16. Defendant David Hagan ("Hagan") has been a director of the Company since November 2004. Defendant Hagan previously served as the Company's CEO from November 2004 to March 2019, President from 2001 to May 2013, and Chair of the Board from August 2014 to February 2019.

17. Defendant Terrell Jones ("Jones") has been a director of the Company since June 2013.

18. Defendant Kathy Misunas ("Misunas") has been a director of the Company since June 2016.

19. Defendants identified in paragraphs 10-18 are referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

20. Digital Colony is a leading digital infrastructure investment firm with over $30 billion in assets under management. Launched in 2017 by Digital Bridge and

Colony Capital, Digital Colony brings together Digital Bridge's industry, operational and investment expertise, and Colony Capital's global operating platform and capital markets access. Digital Colony is a leading investor, owner and operator enabling the next generation of mobile and internet connectivity through investments in mission-critical infrastructure around the globe. It is headquartered in Boca Raton with offices in New York, Los Angeles, London and Singapore, and has over 90 investment and operating professionals.

21. Parent is a Delaware corporation formed by Digital Colony.

22. Merger Sub is a Delaware corporation and a wholly owned subsidiary of Parent.

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

23. Boingo is a leading global provider of wireless connectivity solutions for smartphones, tablets, laptops, wearables and other wireless-enabled consumer devices. Boingo has a diverse monetization model that enables it to generate revenues from wholesale cellular and Wi-Fi offerings, which are targeted towards carriers, venues, and other wholesale partners, and military, retail, and advertising offerings, which are retail products targeted towards customers. Wholesale offerings include distributed antenna systems, towers, and small cells, which are cellular extension networks, private networks and emerging technologies, multifamily, carrier offload, Wi-Fi roaming, value-added services, private label Wi-Fi, and location-based services. Retail products

include Wi-Fi services for military personnel living in the barracks of the U.S. Army, Air Force, and Marine Corps on bases around the world, and Wi-Fi subscriptions and day passes that provide access to commercial hotspots worldwide. Advertising revenue is driven by Wi-Fi sponsorships at airports, hotels, cafes and restaurants, and public spaces. Boingo's customers include some of the world's largest carriers, telecommunications service providers, global consumer brands, and property owners, as well as troops stationed at military bases and Internet savvy consumers on the go.

24. In order to better align reportable segments with the growth drivers and strategic direction of the Company, Boingo restructured its business into five reportable and operating segments – Carrier Services, Military, Private Networks and Emerging Technologies, Multifamily and Legacy.

25. On March 1, 2021, Boingo announced its full year 2020 financial results and business highlights. The Company's Adjusted EBITDA of $83.5 million increased 1.0% compared to $82.6 million in 2019. In the Company's Military segment, revenue was $76.8 million, an increase of 2.5% compared to $74.9 million in 2019. Gross profit margin of 76.2% increased 60 basis points compared to 75.6% in 2019. Income from operations of $24.0 million increased 15.9% compared to $20.7 million in 2019. For the Private Networks and Emerging Technologies segment, revenue of $2.2 million increased 10.4% compared to $2.0 million in 2019.

26. The Company also reported several business highlights. Boingo announced it has signed an agreement with a Tier 1 carrier to join the Long Island Rail

Road ("LIRR") Atlantic Branch portion of the MTA project in New York. The MTA agreements to design, build, operate and maintain wireless services for the LIRR Atlantic Branch and Grand Central Terminal East Side Access facility represent the largest DAS deployments in the Company's history. The Company signed a Wi-Fi offloading agreement with a Tier 1 carrier. Beginning in November 2020, this carrier's customers have begun to utilize Boingo's high-speed Wi-Fi networks via carrier offloading at one airport with more airports expected to launch during 2021. Boingo has also been selected to build and operate a carrier grade Wi-Fi 6 network at Rockefeller Center, New York City's landmark property spanning 22 acres in Midtown Manhattan. As of December 31, 2020, the Company had a total of 74 DAS venues live comprised of 41,200 DAS nodes and an additional 11,500 nodes in backlog. This compares to 73 venues live comprised of 38,100 nodes as of December 31, 2019.

**<u>The Proposed Transaction</u>**

27. On March 1, 2021, Boingo issued a press release announcing the Proposed Transaction. The press release states, in relevant part:

> LOS ANGELES, MARCH 1, 2021 — Boingo Wireless, Inc. ("Boingo" or "the Company") (NASDAQ: WIFI), the leading distributed antenna system ("DAS") and Wi-Fi provider that serves carriers, consumers, property owners and advertisers worldwide, announced today that it has entered into a definitive agreement and plan of merger to be acquired by an affiliate of Digital Colony Management, LLC ("Digital Colony").

Upon completion of the transaction, Boingo will transition from a public company to a privately held company.

Under the terms of the agreement, which has been unanimously approved by Boingo's Board of Directors, Digital Colony will acquire all the outstanding shares of Boingo common stock for $14.00 per share in cash through a merger, in a transaction valued at approximately $854 million, including the assumption of $199 million of Boingo's net debt obligations. The acquisition price represents a 23% premium to Boingo's closing price of $11.40 on February 26, 2021.

"We are pleased to have reached this agreement with Digital Colony, which will deliver significant and immediate value to Boingo's stockholders and concludes a robust strategic review process undertaken by Boingo over the past year," said Mike Finley, Chief Executive Officer of Boingo Wireless. "We believe Digital Colony's expertise owning and operating digital infrastructure businesses, combined with its relationships, resources and access to long-term, private capital markets, will provide greater flexibility for Boingo to continue advancing its business strategy."

Warren Roll, Managing Director of Digital Colony, added, "Boingo is a leader in indoor wireless infrastructure, operating networks that serve a large and growing addressable market. We look forward to working with the experienced Boingo team as they continue to develop and deploy reliable networks serving their diverse set of high-quality customers."

The transaction, which is subject to the receipt of Boingo shareholder approval, regulatory approvals and other customary closing conditions, is expected to close in the second quarter of 2021.

TAP Advisors is serving as exclusive financial advisor and provided a fairness opinion to Boingo's Board of Directors in connection with the transaction and Gunderson Dettmer is serving as legal counsel. Credit Suisse is acting as lead financial advisor and Truist Securities Inc. is acting as co-financial advisor to Digital Colony in connection with the transaction. Debt financing for the transaction is being led by Truist Securities Inc. along with Joint Lead Arrangers and Joint Bookrunners TD Securities and CIT. Simpson Thacher is serving as legal advisor to Digital Colony.

**<u>Insiders' Interests in the Proposed Transaction</u>**

28. Boingo insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Boingo.

29. Notably, Company insiders stand to reap substantial financial benefits for securing the deal with Digital Colony. Pursuant to the Merger Agreement, all outstanding stock options and restricted stock units will vest and convert into the right to receive cash payments. The following tables summarize the value of the Company options and restricted stock units held by Company insiders:

| Name | Shares Held (#) | Shares Held ($) | Options Held (#)(1) | Options Held ($) | Restricted stock units Held (#)(2) | Restricted stock units Held ($) | Total ($) |
|---|---|---|---|---|---|---|---|
| Maury Austin | 45,893 | 642,502 | — | — | 9,255 | 129,570 | 772,072 |
| Dawn Callahan | 3,789 | 53,046 | 7,993 | 3,996 | 68,458 | 958,415 | 1,015,458 |
| Roy Chestnutt | 4,711 | 65,954 | — | — | 18,678 | 261,492 | 327,446 |
| Michele Choka | 12,989 | 181,846 | — | — | 12,332 | 172,648 | 354,494 |
| Chuck Davis | 102,724 | 1,438,136 | — | — | 9,255 | 129,570 | 1,567,706 |
| Mike Finley | 92,537 | 1,295,518 | — | — | 441,460 | 6,180,442 | 7,475,960 |
| David Hagan | 997,502 | 13,965,028 | — | — | 9,255 | 129,570 | 14,094,598 |
| Peter Hovenier | 391,885 | 5,486,390 | — | — | 175,381 | 2,455,329 | 7,941,719 |
| Terrell Jones | 72,398 | 1,013,572 | — | — | 9,255 | 129,570 | 1,143,142 |
| Kathy Misunas | 42,546 | 595,644 | — | — | 9,255 | 129,570 | 725,214 |
| Derek Peterson | 32,791 | 459,074 | — | — | 160,199 | 2,242,788 | 2,701,862 |
| Lance Rosenzweig | 86,630 | 1,212,820 | — | — | 9,255 | 129,570 | 1,342,390 |

30. Further, if they are terminated in connection with the Proposed Transaction, Boingo's named executive officers are set to receive substantial cash severance payments in the form of golden parachute compensation, as set forth in the following table:

| Name | Cash ($)(1) | Equity ($)(2) | Perquisites/ Benefits ($)(3) | Total |
|---|---|---|---|---|
| Mike Finley | 1,738,750 | 6,180,442 | 51,439 | 7,970,632 |
| Peter Hovenier | 667,967 | 2,455,329 | 34,293 | 3,157,590 |

| | | | | |
|---|---|---|---|---|
| Dawn Callahan | 507,384 | 958,415 | 11,126 | 1,476,926 |
| Derek Peterson | 530,856 | 2,242,788 | 35,032 | 2,808,676 |
| Doug Lodder | — | — | — | — |
| David Hagan | — | 129,570 | — | 129,570 |

**The Proxy Statement Contains Material Misstatements or Omissions**

31. The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to Boingo's stockholders. The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction or seek appraisal.

32. Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the financial projections for Boingo and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, TAP Advisors; and (ii) the background of the Proposed Transaction.

***Material Omissions Concerning the Financial Projections for Boingo and TAP Advisors' Financial Analyses***

33. The Proxy Statement omits material information regarding the financial projections for Boingo.

34. For example, the Proxy Statement sets forth that "TAP Advisors performed consolidated and sum-of-the-parts discounted cash flow analyses of Boingo based on forecasted after-tax unlevered free cash flows for Boingo and an estimate of

its terminal/continuing value at the end of the forecast horizon." Proxy Statement at 46. Yet, the Proxy Statement fails to disclose the Company's segment projections utilized in the sum-of-the-parts analysis, including the Company's segment level unlevered free cash flows.

35. Additionally, the Proxy Statement sets forth that the Company updated its financial projections numerous times throughout the process. The Proxy Statement, however, fails to disclose: (i) the Company's initial financial projections; (ii) the projections provided to Digital Colony; and (iii) the projections reviewed by the Board at the February 1, 2021 and February 8, 2021 Board meetings, or a fair summary of all changes made to the projections.

36. Moreover, the Proxy Statement sets forth that:

> In making its determination and recommendation of the Merger to Boingo's stockholders, the Boingo Board considered a number of factors, including the following (which factors are not necessarily presented in order of relative importance):
>
> * * *
>
> The Boingo Board considered the financial projections prepared by Boingo's senior management team, which reflected multiple potential strategic alternatives available to Boingo on a standalone basis and were not risk-adjusted for all scenarios.

*Id*. at 47-48. The Proxy Statement, however, fails to disclose the Company's non-risk-adjusted projections prepared by the Company's management.

37. The Proxy Statement also fails to disclose the Company's net income projections as well as all line items underlying Adjusted EBITDA and Company Cash Flow.

38. The Proxy Statement also omits material information regarding TAP Advisors' financial analyses.

39. The Proxy Statement describes TAP Advisors' fairness opinion and the various valuation analyses it performed in support of its opinion. However, the description of TAP Advisors' fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Boingo's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on TAP Advisors' fairness opinion in determining whether to vote in favor of the Proposed Transaction.

40. With respect to TAP Advisors' *Discounted Cash Flow Analyses*, the Proxy Statement fails to disclose: (i) the after-tax unlevered free cash flows for Boingo on a consolidated basis and a segment level basis utilized in the analysis; (ii) the terminal metrics used in the analyses and quantification thereof; (iii) quantification of the terminal values for the Company; and (iv) quantification of the inputs and assumptions underlying the discount rate ranges used in the analyses.

41. With respect to TAP Advisors' *Boingo Wall Street Equity Research Analyst Stock Price Targets* analysis, the Proxy Statement fails to disclose the price targets observed and the sources thereof.

42. With respect to TAP Advisors' *Premiums Paid in Selected Merger and Acquisition Transactions* analysis, the Proxy Statemen fails to identify the transactions observed and disclose the individual premiums for each transaction.

43. The omission of this material information renders the statements in the "Certain Financial Projections" and "Opinion of Boingo's Financial Advisor" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

***Material Omissions Concerning the Background of the Proposed Transaction***

44. The Proxy Statement fails to disclose material information concerning the background of the Proposed Transaction.

45. The Proxy Statement sets forth that the Company executed non-disclosure agreements with multiple parties throughout the process. The Proxy Statement fails, however, to disclose the terms of the non-disclosure agreements, including whether they included standstill provisions or "don't-ask-don't-waive" standstill provisions that are presently precluding these parties from submitting a topping bid for the Company.

46. The failure to disclose the existence of DADW provisions creates the false impression that a potential bidder who entered into a confidentiality agreement could make a superior proposal for Boingo. If the potential acquirer's confidentiality

agreement contains a DADW provision, then that potential bidder can only make a superior proposal by (i) breaching the confidentiality agreement—since in order to make the superior proposal, it would have to ask for a waiver, either directly or indirectly; or by (ii) being released from the agreement, which if action has been done, is omitted from the Proxy Statement.

47. Any reasonable Boingo stockholder would deem the fact that the most likely topping bidders for the Company may be precluded from making a topping bid for the Company to significantly alter the total mix of information.

48. The omission of this information renders the statements in the "Background of the Merger" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

49. The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other stockholders of Boingo will be unable to make an informed voting or appraisal decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

### Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder

50. Plaintiff repeats all previous allegations as if set forth in full.

51. During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

52. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about Boingo's financial projections, the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by TAP Advisors, and the background of the Proposed Transaction. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

53. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

54. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

55. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

56. Plaintiff repeats all previous allegations as if set forth in full.

57. The Individual Defendants acted as controlling persons of Boingo within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Boingo, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

58. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

59. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy Statement.

60. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

61. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

62. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged

herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Boingo's stockholders will be irreparably harmed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Boingo, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Boingo stockholders;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: May 20, 2021

**WEISSLAW LLP**
Joel E. Elkins

By: ______________________

Joel E. Elkins
9100 Wilshire Blvd. #725 E.
Beverly Hills, CA 90210
Telephone: 310/208-2800
Facsimile: 310/209-2348
-and-
Richard A. Acocelli
1500 Broadway, 16th Floor
New York, NY 10036
Telephone: 212/682-3025
Facsimile: 212/682-3010

*Attorneys for Plaintiff*